**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **CR 07-005S** |
| **EUDY TEJADA-PICHARDO a/k/a** | : | |
| **Enoc Soto and** | : | |
| **RICARDO MEJIA** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO PRODUCE EXCULPATORY EVIDENCE**

The United States of America urges the Court to deny the defendants' motion for disclosure. Not only has the government fully satisfied its discovery and Brady obligations, but the defendants now possess more than sufficient impeachment evidence against both informants, at least one whom the government does not intend to call as a witness.[1] At the conclusion of the March 19, 2007 hearing, several defense requests remained unresolved. Specifically, these requests were numbered 4, 5, 6, 7, 11, 12, 14, 15, and 16. On March 22, 2007, the government provided the defendants with additional discovery addressing their requests numbered 4, 6, and 12. The government also updated its response to request number 2. Therefore, all that remains for the Court's determination are the following requests:

(5) the informant's employment;

(7) the informant's tax documents;

[1] In United States v. Brassard, 212 F.3d 54, 56-57 (1st Cir. 2000), the First Circuit rejected the defense claim that Brady was violated when the court conditioned the disclosure of additional information concerning a confidential informant (CI) on the CI being called as a witness.

(11) aliases of the second informant;

(14) the telephone number and service provider of the second informant;

(15) the name of the second informant's family member; and,

(16) the caption and docket number of the second informant's family member's case.

**FACTS**

On December 18, 2006, Tejada-Pichardo and Mejia delivered approximately two kilograms of cocaine to an individual cooperating with the Drug Enforcement Administration (DEA). The deal was arranged through a series of phone calls between the informant and Tejada-Pichardo beginning on December 11, 2006. Another individual, the second informant, introduced the informant to Tejada-Pichardo, and served as a link between the informant and Tejada-Pichardo on several occasions during the week following December 11, 2006.

The first phone call occurred on December 11, 2006 when the informant placed a call to Tejada-Pichardo, and Tejada-Pichardo agreed to sell the informant six kilograms of cocaine for $20,500 per kilo. During this call, it was agreed that Tejada-Pichardo would deliver the cocaine to Providence the next day. However, on December 12, 2006, a call was placed to Tejada-Pichardo who stated that he only had three kilograms left because he had disposed of the other three kilograms.

The informant spoke with Tejada-Pichardo again on December 18, 2006. Tejada-Pichardo told the informant that he was on his way to Providence with two kilograms of cocaine, and that he would bring two more down later. He also told the informant that he would be able to give the informant a better price when the cocaine was his.

At approximately 9:15 p.m. on December 18, 2006, the informant received a call from Tejada-Pichardo and was told to meet Tejada-Pichardo at the McDonald’s on Broad Street in Providence. Surveillance observed Tejada-Pichardo and Mejia arrive in a Toyota Camry. The second informant, who had been following the defendants, arrived in a red vehicle. Tejada-Pichardo spoke with the informant, placed a large suitcase in the informant’s vehicle and then got in the informant’s car. Mejia got in the red car with second informant, and they followed the informant’s vehicle.

The informant gave a signal that the drugs were in the car, and agents stopped both vehicles. Inside the suitcase that Tejada-Pichardo had placed in the informant’s car, agents found approximately two kilograms of cocaine. Inside the second informant’s vehicle, agents found a loaded .45 caliber pistol with an obliterated serial number. Upon searching Tejada-Pichardo’s Toyota Camry, agents found a drug ledger.

Both Tejada-Pichardo and Mejia waived their rights and agreed to speak with agents. Mejia admitted that he accompanied Tejada-Pichardo to "protect him" and that he assumed Tejada-Pichardo was engaging in a drug deal. He said Tejada-Pichardo gave him the gun at McDonald's and that he placed the firearm under the seat in the second informant's vehicle. Mejia offered to work for the DEA. Tejada-Pichardo, who claimed to be Enoc Soto at the time, told agents that he was only making $500 off the cocaine deal.

**ARGUMENT**

The government has more than fulfilled its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). Accordingly, the remainder of the defendant's motion should be denied.

Brady addresses the government's obligation to provide evidence to the defense that is both exculpatory and material; that is, evidence, that if disclosed, creates a reasonable probability of altering the result of the proceeding. See United States v. Caro-Muniz, 406 F.3d 22, 29 (1st Cir. 2005). Giglio recognizes that understandings or agreements as to future prosecution between the government and its witnesses constitutes exculpatory evidence within the meaning of Brady. See United States v. Rodriguez-Rivera, 473 F.3d 21, 25-26 (1st Cir. 2007).

The constitution does not, however, require the government to disclose impeachment information relating to informants or any other witnesses before entering a binding plea agreement with a defendant. See United States v. Ruiz, 536 U.S. 622, 632-33 (2002) (recognizing that requiring the government to disclose impeachment information prior to a guilty plea could force the government to disclose the identity of confidential informants in cases that result in a plea and could force the government to devote substantially more resources prior to plea bargaining); but cf. Ferrara v. United States, 456 F.3d 278, 288-91 & n.6 (1st Cir. 2006).[2] The Supreme Court in Ruiz also acknowledged that a defendant does not have a constitutional right to receive information relating to an affirmative defense prior to plea bargaining also because of the risk to informants and the added burden to the government. See Ruiz, 536 U.S. at 633. In short,

[2] In Ferrara, 456 F.3d at 291, the First Circuit recognized that the government is not required to "disclose every shred of information that might conceivably affect the defendant's decisionmaking," but the court nonetheless concluded that the defendant's plea was not voluntary because the prosecutor did not disclose a witness's recantation. That case, however, is inapposite because it involved prosecutorial misconduct, specifically, the government's manipulation of its "star" witness, as well as the failure to disclose evidence establishing factual innocence, namely the star witness's "stunning" recantation. Id. at 297. Such evidence regarding a key witness is vastly different from the promises, inducements or rewards paid to an informant. See Ruiz, 536 U.S. at 631 (recognizing the distinction). Furthermore, the court in Ferrara did not even address Ruiz since it determined that the defendant's plea was involuntary regardless of whether the defendant had the right to receive the exculpatory evidence in question.

neither Brady nor Giglio create an unfettered right to search through the government's files or to launch a fishing expedition, especially prior to plea. See Rodriguez, 473 F.3d at 25-26 ("Brady does not, however, establish any 'general constitutional right to discovery in a criminal case. . . ."); Caro-Muniz, 406 F.3d at 29.

A. Request (5) - The informant's employment.

The informant's employers have no bearing on this case. Nor have the defendants articulated any relation the employers have to this case. The defendant's request is a fishing expedition at best. Moreover, if this information were revealed, the informant could easily become the target of retribution or harassment from the defendants or their associates at his or her place of employment, resulting in the loss of a job.

B. Request (7) - The informant's tax documents.

The informant's tax documents are not in the possession of any of the governmental agencies involved in this case. To obtain such records, the government must petition the Court for an ex parte order based upon reasonable cause to believe that the above-described return and return information is or may be relevant to a matter relating to the commission of a crime. See 26 U.S.C. 6103. The government is unable to do that in this case because the government has no reason to believe the informant committed a crime. Furthermore, the informant's tax documents

are irrelevant to this proceeding. In fact, the defendants have not demonstrated that the informant even has an obligation to file tax returns. But even if the informant were required to file returns, there is no reason to believe such returns are exculpatory in this case. Accordingly, the Court should deny this request.

C. Request (11) - Aliases of the second informant.

The aliases of the second informant, if they exist, are not relevant or exculpatory.

D. Request (14) - The telephone number and service provider of the second informant.

The defendants requested this information so they might subpoena the second informant's telephone records. This request also constitutes a fishing expedition. Furthermore, compliance with this request could jeopardize the safety of the second informant as it is possible to issue a trial subpoena for subscriber records that contain personal information, including addresses.

E. Request (15) - The name of the informant's family member and Request (16) - The caption and docket number of the informant's family member's case.

The name of the informant's family member is not exculpatory. Neither is the family member's caption and docket number. This information does not have any bearing upon the defendants' guilt; however, compliance with this request could seriously jeopardize the safety of the individual in question. To reveal the name of the family member creates an unnecessary risk of danger in light of any, albeit as of now unarticulated, benefit to defense.

**CONCLUSION**

For the above reasons, the government submits that defendants' discovery motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

On March 23, 2007, I caused the within "Government's Response to Defendants' Motion to Produce Exculpatory Evidence" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Law Offices of Thomas G. Briody
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903

Ms. Mary McElroy
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj