**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CR No. 07-005S** |
| | ) | |
| **EUDY ANTONIO TEJADA PICHARDO** | ) | |
| **and** | ) | |
| **RICARDO MEJIA** | | |

---

**SECOND JOINT MOTION TO PRODUCE DOCUMENTS**
**OR ADDITIONAL DISCOVERY**
**PERTAINING TO INFORMANT'S IMMIGRATION PAROLE**

Now comes the defendant, by and through counsel, and moves to compel the government to produce any documents in the possession of the government that pertain to the decision seeking or approving a request for immigration parole for the primary informant—aka "Jose"—in the above captioned matter. As grounds for this motion, the defendant relies on the accompanying memorandum.

_/s/Thomas G. Briody_
R.I. Bar no. 4427
The Remington Building
91 Friendship Street
Third Floor
Providence, RI 02903
(401) 751-5151
(401) 421-0876 (fascimile)
Tbriodylaw@aol.com

/s/ Mary S. McElroy
R.I. Bar no. 4830
Assistant Federal Defender
10 Weybosset Street
Suite 300
Providence, RI 02903
(401) 528-4281
mary_mcelroy@fd.org

The undersigned certifies that a true copy of this motion was transmitted to Sandra Beckner, AUSA, Bank of America Center, Providence Rhode Island, on this 11th day of May, 2007, via the ECF system.

/s/ Thomas G. Briody

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CR No. 07-005S** |
| | ) | |
| **EUDY ANTONIO TEJADA PICHARDO** | ) | |
| **and** | ) | |
| **RICARDO MEJIA** | | |

---

**MEMORANDUM IN SUPPORT OF SECOND JOINT MOTION TO PRODUCE DOCUMENTS PERTAINING TO INFORMANT'S IMMIGRATION PAROLE**

The primary informant in the above-captioned matter, identified herein as "Jose," is a felon previously convicted of a federal drug offense and ordered deported from the United States. Following his deportation, the primary informant was returned to the United States as part of an immigration parole agreement. During a pre-trial conference on April 25, the defendants inquired as to whether the government sought court permission for "Jose" to serve as an informant, as required by the informant's Judgment and Commitment. ("[T]he defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.") The government indicated it would make an inquiry.

On April 30, 2007 the AUSA assigned to this matter wrote to the court *ex parte* and advised that the DEA "did not notify probation because they were not aware that the informant's supervised release survived deportation." The government claimed that it did not believe that this fact constituted a promise, reward or inducement to the informant, but left disclosure of the information to the court. On May 3, the court disclosed this information to the defendants during a hearing. The defendants inquired as to whom within the government bore responsibility for supervising the informant, since the government letter failed to identify any individual. On May 4, the AUSA wrote to defense counsel and indicated that a Task Force Agent named Joseph McHugh "was the agent responsible for notifying U.S. Probation regarding the informant's cooperation".

As a preliminary matter, the defendant object to the government's deliberate submission of information to the court *ex parte,* without prior permission of the court or as expressly provided by statute or the Federal Rules of Criminal Procedure. The government cites no support authorizing an *ex parte* submission, and the decision to write to the court directly without notice to defense counsel is inappropriate. Nor does the government cite any basis on which it can support an assertion that deportation somehow voids or eliminates the need to comply with a judgment of this court. The government's failure to comply with a judgment that required judicial permission to use "Jose" as an informant resulted in a significant benefit to the informant. The government's actions allowed him to avoid all standard conditions of supervision, including (1) not leaving the judicial district without permission "of the court or probation officer"; (2) monthly reporting to probation; and (3) mandatory drug testing. It is difficult to believe that benefits such as these could somehow be construed to be anything other than a reward for serving as an informer.

The AUSA's correspondence on this issue suggests that this problem is a minor one, involving an oversight by a Task Force Agent and the United States Office of Probation. The defendant disagrees. The informant's Judgment and Commitment Order expressly required "permission of the court" before "Jose" could be employed as an informer. Notification to a Probation Officer is insufficient to comply with the terms of the Judgment. Against this backdrop, it is difficult to imagine that a decision to permit a deported alien to reenter the United States was made without the involvement of higher level government officials.

The defendants are left with numerous questions concerning the use of "Jose" as an informant. They include, but are not necessarily limited to:

1. When did the informant contact government officials?
2. Who was contacted?
3. What are the identities of the government officials who were involved in making arrangements for the informant to return to the United States?
4. What documents were generated in connection with the effort to return "Jose" to the United States? What negotiations took place?
5. Was the United States Attorney's office or the Justice Department involved in this process? Who was responsible for notifying the court and seeking permission for

the informant to work for law enforcement?

6. Since it appears that court permission to use "Jose" was not sought, why not?

7. When did the government become aware of its obligation to obtain court permission to use "Jose"?

8. Whether the United States intends to prosecute the primary informant for failing to abide by the terms of his supervised release?

Accordingly, the defendant seeks production of all documents tending to identify those individuals who sought or assisted "Jose" in obtaining immigration parole, including individuals within the United States Attorney's Office for the District of Rhode Island or the Department of Justice. The defendant further seeks production of any documents that tend to show negotiations leading up to the agreement to permit "Jose" to reenter the country. Such documents are likely to lead to the discovery of admissible evidence, including impeachment evidence and evidence of promises, rewards and inducements, and clearly fall within the meaning of Brady v. Maryland, 373 U.S. 83 (1963), Davis v. Alaska, 415 U.S. 308 (1974), and Giglio v. United States, 450 U.S. 150 (1972). Justice requires that the defendants have full access to information pertaining to the use of this informant, the incentives offered, and the rewards provided by the government for his cooperation. See United States v. Hoffa, 385 U.S. 293 (1966).

Here, the United States, whether intentionally or unintentionally, violated a court order. In doing so, an informant was able to avoid court-ordered supervision. There is no indication that the informant will be charged with failing to abide by the terms of his release. Due process requires that the defendants in this proceeding receive full disclosure concerning this unusual arrangement.

_/s/Thomas G. Briody_
Thomas G. Briody
R.I. Bar no. 4427
The Remington Building
91 Friendship Street
Third Floor
Providence, RI 02903
(401) 751-5151
(401) 421-0876 (fascimile)
Tbriodylaw@aol.com

/s/ Mary S. McElroy
R.I. Bar no. 4830
Assistant Federal Defender
10 Weybosset Street
Suite 300
Providence, RI 02903
(401) 528-4281
mary_mcelroy@fd.org

The undersigned certifies that a true copy of this memorandum was transmitted to Sandra Beckner, AUSA, Bank of America Center, Providence Rhode Island, on this 11th day of May, 2007, via the ECF system.

/s/ Thomas G. Briody