**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**
**Plaintiff**

**vs.** **CR. 2007-005-S-LDA**

**EUDY TEJADA-PICHARDO**
**Aka Enoc Soto and**
**RICARDO MEJIA**

**DEFENDANT TEJADA'S REPLY BRIEF TO THE GOVERNMENT'S RESPONSE IN OPPOSITION**

**THERE IS NO IMPLIED WAIVER**

The government relies on Bui v. DiPaolo, 170 F.3d 323 (1st Cir. 1999) to support its claim that Mr. Tejada impliedly waived his Miranda rights. The government overlooks the fact that Bui was a habeas case, and the burden to prove a constitutional violation there rested with the inmate petitioner. Here, the government remains saddled with the burden of establishing a knowing and voluntary waiver. Here, this court must presume that he did not waive his rights. Here, there is nothing on which a waiver can be implied.

The government continually refers to the Spanish language form executed by Mr. Tejada as a "waiver" form, perhaps hoping that merely by repeating the word it will somehow transform the language of the form into an actual waiver. In fact, the form is titled "Derechos" which translates into the word "rights." The word "waiver" does not appear on the form in Spanish or in any other language.

In Bui, the defendant selectively responded to questions, a fact that was significant in finding an implied waiver. In contrast, Mr. Tejada responded to everything

asked of him, instead of selectively answering questions. The government claims that "it is reasonable to infer" that Tejada understood his rights and agreed to waive them. To the contrary, it is reasonable to infer that Mr. Tejada did everything the officers told him to do. When told at the scene to say nothing, he said nothing. When given the "Derechos" form and directed to read it, he appeared to read it. When told to initial the form, he did so, but in a strange manner which the officers failed to question. When asked questions, Mr. Tejada answered them, though perhaps not to the officer's liking.

The government offers nothing more to support a claim of implied waiver. Mr. Tejada did not offer to speak to the police. They did not ask him if he would agree to speak with them. For the court to accept the government's position, it must ignore the teaching of Miranda that the mere fact that a confession is obtained can never be enough to establish a waiver.

## VOLUNTARINESS

The government further argues that there is no police coercion, and says the defense argument is based "on the presumption that police were aware of a romantic relationship between he and Ms. Perez." The government's assessment of the defense argument is wrong. The fact is that Ms. Perez was a government agent on the night of the defendant's arrest. Regardless of whether she expressly told DEA agents of her romantic involvement with Mr. Tejada, she acted throughout this case as an agent of the government and the government is responsible for her actions. The fact is that the government capitalized on Ms. Perez's relationship with Mr. Tejada, and deliberately misled Mr. Tejada by pretending to arrest her.

The government relies on Johnson v. Trigg, 28 F.3d 639 (7th Cir. 1994)[1] for the proposition that a "bona fide" arrest cannot be used as grounds to suppress a confession. In Trigg a juvenile confessed to a robbery after his mother had legitimately been arrested. The juvenile expressly agreed at the end of his confession that no promises had been made to him regarding his mother being released. Arguing by analogy, the government seems to suggest that Marie Perez was lawfully arrested, and that Tejada cannot claim that her "detention" coerced his confession.

Trigg in no way, shape or form resembles the facts in this case. There was nothing "bona fide" about Ms. Perez. She was never "arrested," according to the testimony of Agent Naylor; she was detained and handcuffed, and brought back to the police station—police subterfuge that Naylor concedes Mr. Tejada could not have missed. It was all a fraud—an act performed for Mr. Tejada's benefit, aimed to convince him that Ms. Perez was being treated in the same harsh manner as Mr. Tejada himself. The government argues that these actions were taken to "protect" Ms. Perez. What that means is that the government intended that Mr. Tejada would be influenced by police deception.

The government's reliance on Thompson v. Haley 255 F.3d 1292 (11th Cir. 2001) is similarly unavailing. Thompson did not involve a ruse or charade designed to influence a defendant. Instead the police allegedly threatened to charge a girlfriend of the defendant where the girlfriend had already admitted her guilt in connection with a murder. Nor does United States v. Jackson, 918 F.2d 236 (1st Cir. 1990) assist the government; in that case, the court rejected a claim based on coercion due to the arrest of the defendant's sister—there was no evidence that the sister's arrest was unjustified, nor

---

1 The government mistakenly cites Triggs as a First Circuit case.

that she and the defendant were unusually close. Further, there was evidence of Jackson's "very substantial previous experience with the criminal justice system." Unlike Mr. Jackson, Mr. Tejada has just one previous arrest, and the charge in that case was dismissed.

The most critical flaw in the government's analysis is its failure to recognize that Mr. Tejada's statements were unreliable. Agent Naylor knew that Tejada's alleged claim that Marie Perez "had nothing to do" with the drug delivery wasn't true. The government's position here is that it is perfectly acceptable to mislead a defendant to obtain a confession and then use the confession even when it contains statements that are obviously false. This argument has no place in an adversarial system aimed at uncovering the truth. Judge Posner's observations in Trigg actually supports the defendant's claim for suppression:

> [O]ne possible definition of a confession inadmissible because coerced would be that it had been extracted in circumstances that cast serious doubt on its reliability. That was the approach of the common law. 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 6.2, p. 440 (1984). But modern courts go further and suppress, in the name of due process, even reliable confessions when the police have resorted to tactics thought likely to prevent the suspect from making a rational choice whether to confess or remain silent. Rogers v. Richmond, 365 U.S. 534, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961)[.]

Trigg, at 642 (additional citations omitted).

The circumstances surrounding the statement of Eudy Tejada following his arrest convincingly show that his words were unreliable. The statement evolved from Mr. Tejada's close relationship with Marie Perez, and government manipulation of his emotions about the fate of Ms. Perez. The government cannot overcome this hurdle and

satisfy its burden of showing that Mr. Tejada's statements were the product of a rational choice. This court should not admit statements at trial where they result from the sort of tactics used here.

/s/ Thomas G. Briody
R.I. Bar no. 4427
The Remington Building
91 Friendship Street
Third Floor
Providence, RI 02903
(401) 751-5151
(401) 421-0876 (facsimile)
Tbriodylaw@aol.com

The undersigned certifies that this motion was filed electronically and distributed to all parties via the ECF system on July 17, 2007.

/s/Thomas G. Briody