**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR 07-005S** |
| | : | |
| **EUDY TEJADA-PICHARDO a/k/a** | : | |
| **Enoc Soto and** | : | |
| **RICARDO MEJIA** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO PRODUCE EXCULPATORY EVIDENCE**

Defendant Tejada-Pichardo moves for the production of exculpatory evidence. To the extent that the government objects to specific requests, the government asks that the motion be denied.

## INTRODUCTION

In his motion, the defendant requests nine different categories of material much of which involves a case unrelated to the pending prosecution. To the extent that the defendant's request does not infringe upon a significant government interest and is at least arguably related to the pending prosecution, the government has responded to the defendant's requests. To the extent that the defendant's requests jeopardize an ongoing investigation or the safety of cooperating individuals, the government submits such material for an _in camera_ review. Finally, to the extent the defendant seeks information involving a case that is unrelated to the pending prosecution, the

government contends that such material is neither favorable to the accused nor material to his defense, and thus, not discoverable in this case.

## LAW

Brady addresses the government's obligation to provide evidence to the defense that is both exculpatory and material; that is, evidence, that if disclosed, creates a reasonable probability of altering the result of the proceeding. See United States v. Caro-Muniz, 406 F.3d 22, 29 (1st Cir. 2005). To be "favorable" to the defendant, the material must either be exculpatory in nature or tend to impeach prosecution witnesses. United States v. Reyes, 270 F.3d 1158, 1167 (7th Cir. 2001). Exculpatory information is "'supportive of a claim of innocence' to the crimes charged." Id. (quoting United States v. Agurs, 427 U.S. 97, 107 (1976)); see, e.g., United States v. Schneiderhan, 404 F.3d 73, 80 (1st Cir. 2005) (no Brady violation where nondisclosed evidence was irrelevant to the charged crime). Understandings or agreements as to future prosecution between the government and its witnesses constitutes exculpatory evidence within the meaning of Brady. See United States v. Rodriguez-Rivera, 473 F.3d 21, 25-26 (1st Cir. 2007).

"Brady does not require a prosecutor divulge every scintilla of evidence that might conceivably inure to a defendant's

benefit." Reyes, 270 F.3d at 1166; see United States v. Blais, 98 F.3d 647, 651 (1996) (evidence is only material if there is a "reasonable probability" that had it been disclosed the result of the proceeding would have been different). In short, neither Brady nor Giglio create an unfettered right to search through the government's files or to launch a fishing expedition. See Rodriguez, 473 F.3d at 25-26 ("Brady does not, however, establish any 'general constitutional right to discovery in a criminal case. . . ."); Caro-Muniz, 406 F.3d at 29.

**RESPONSE TO THE DEFENDANT'S REQUESTS**

1. All records maintained by the U.S. Drug Enforcement Administration (DEA) concerning Task Force Agent (TFA) Michael Naylor's contact with John Cicilline or Lisa Torres in connection with the cooperation by the female informant on behalf of her family member. This request includes dates of all meetings, written agreements, notes, reports, emails, voicemails, or any other recordings.

Beyond that already provided, the DEA and TFA Naylor do not have any agreements, notes, reports, emails, voicemails, or any other recordings concerning TFA Naylor's contact with John Cicilline or Lisa Torres in connection with the cooperation by the female informant.

2. All reports, emails, voicemails, notes or documents made by TFA Naylor in connection with his August 27, 2007 telephone conversation with the female informant.

TFA Naylor does not have any reports, emails, voicemails, notes or documents made by him in connection with his August 27,

2007 telephone conversation with the female informant. The emails in the possession of the undersigned Assistant U.S. Attorney (AUSA) relating to this request will be submitted to the defense and the Court with a letter from counsel.

3. All reports, notes, 302s, documents, or emails in the custody of the U.S. Attorney's Office for the District of Rhode Island and Massachusetts that pertain to an investigation of Lisa Torres, John Cicilline, or the female informant, including witness statements made by the female informant concern her relationship with Lisa Torres or John Cicilline. This request includes, but is not limited to, materials generated in connection with the female informant's interview with Special Agent Kimberly Lawrence of the Federal Bureau of Investigation (FBI).

To the extent this request constitutes a request for any information relating to Lisa Torres or John Cicilline, defendants in a separate and unrelated federal prosecution involving events that predate the crime committed in this case, the defense request is overly broad and seeks material that is neither favorable to the accused nor material to his defense.

To the extent this request seeks material relating to the female informant and either John Cicilline or Lisa Torres, the government submits one report to the Court for an in camera review. The report that will be submitted relates to an ongoing investigation that may be compromised upon disclosure of the information contained therein. It also could endanger individuals cooperating with the government. When Special Agent Kimberly Lawrence completes her report regarding her interview

with the female informant, that report will also be submitted to the Court for an in camera review.

4. All reports, email, voicemails, notes, receipts or documents made by TFA Naylor in connection with his January 20, 2007 meeting with the female informant.

TFA Naylor does not have any reports, emails, voicemails or notes made by him in connection with his January 20, 2007 meeting with the female informant. The emails in the possession of the undersigned AUSA relating to this request will be submitted to the defense and the Court through a letter from counsel. A physical receipt for the $2,500 in moving expenses exists; however, the government believes it may further jeopardize the safety of the informant to disclose the actual receipt.

5. All documents, notes, reports, emails, voicemails, or any other materials, including any signed agreement, reflecting that Lisa Torres was registered as an informant for the DEA or any other law enforcement agency within the Districts of Rhode Island, Massachusetts or elsewhere in the years 2003, 2004, 2005, 2006, and 2007.

This request seeks material that is not favorable to the accused or material to his defense. The defendant seeks material, some of it pre-dating his arrest by almost three years, that involves cases unrelated to the pending prosecution.

6. All documents, notes, reports, emails, voicemails, or materials that pertain to reviews of Lisa Torres' status and performance as an informant, including whether she was deactivated or reactivated, and the specific reasons for said deactivation or reactivation, in the years, 2003, 2004, 2005, 2006, and 2007.

This request seeks material that is not favorable to the accused or material to his defense. The defendant seeks material, some of it pre-dating his arrest by almost three years, that involves cases unrelated to the pending prosecution.

7. All emails, notes, reports, correspondence or documents of any kind reflecting efforts by AUSA Sandra Beckner or any other prosecutor of the U.S. Attorney's Office for the District of Rhode Island to obtain a dismissal/reduction of charges lodged against the female subinformant's husband in New York or in any other jurisdiction.

Prior to March 9, 2007, the undersigned contacted an AUSA in the U.S. Attorney's Office for the Western District of New York (WDNY) regarding the female informant and her family member. The undersigned inquired as to whether the WDNY was interested in allowing the female informant and/or her family member to cooperate and thus credit the female informant's family member for any additional cooperation as well as for the cooperation provided in this case. The AUSA in the WDNY told the undersigned AUSA that the District of Rhode Island should compensate the female informant's family member for the cooperation provided in this case and that the WDNY did not want to consider the cooperation provided by the female informant in this case in

determining whether any benefit should be provided to the female informant's family member.

Based upon this conversation, the undersigned AUSA filed a motion for a downward departure for the female informant's family member and the female informant was told that her family member would not receive any other benefit aside from the previously disclosed motion for a downward departure for her cooperation in this case. The female informant was also told that she must engage in additional cooperation for her husband to receive sentencing credit.

As stated in the undersigned's letter to defense counsel dated March 14, 2007, the female informant cooperated with the government to assist a family member at sentencing. The benefit received by the female informant's family member as of the date of March 14, 2007 was specified in the letter.

Also, included in the March 14, 2007 letter was the amount of money paid to the female informant for moving expenses once her identity became known. As stated in the letter, on January 20, 2007, the DEA paid the female informant $2,500 in moving expenses. By January 20, 2007 it became necessary for the female informant to move, because she learned that the defendants in this case believed that she was the cooperator.

On August 10, 2007, the defendants filed a motion requesting information regarding the benefits received by the female

informant and/or her family member from the WDNY. Defendants also obtained transcripts from the family member's trial here in the District of Rhode Island and they filed another motion requesting additional information about the male informant. Because of the defendant's motions, the undersigned AUSA contacted the AUSA in the WDNY and learned that the WDNY had not provided the female informant or her family member with any benefit for cooperation. The undersigned AUSA asked the AUSA in the WDNY to inform the undersigned should this situation change. The government will provide the defense and the Court with a copy of the email sent by the undersigned regarding this information.

On October 10, 2007, the undersigned AUSA contacted the AUSA in the WDNY via email again. The AUSA in the WDNY once again stated that the WDNY has not provided any benefit to the female informant or her family member for cooperation by the female informant. He also stated that the female informant has not provided any cooperation to the WDNY. According to the AUSA in the WDNY, the female informant met with agents in the WDNY for the first time on October 9, 2007. The female informant was told that should she provide any cooperation in the future, whether in the WDNY or any other district, the WDNY may consider crediting the female informant's family member at sentencing. The AUSA in the WDNY subsequently informed the undersigned AUSA that the

female informant would only be allowed to cooperate by providing information.

8. All phone numbers for the female informant and Lisa Torres, or any other information that documents telephonic contact between Lisa Torres and the female subinformant.

On October 10, 2007, the undersigned contacted Special Agent James McCormack regarding potential contact numbers for Lisa Torres. Based upon interviews conducted, SA McCormack had been given 12 telephone numbers that were represented to be potential contact numbers for Lisa Torres. These numbers were compared to the informant's telephone records and the results of this comparison will be provided to defense counsel and the Court in a separate letter. Also, a list of the phone numbers compared to the records is included.

9. Any other information which might reasonably be characterized as evidence favorable to Mr. Tejada on the issues of guilt or punishment.

The government does not have any evidence responsive to this request.

**CONCLUSION**

Much of the information sought by the defendant does not relate to his case. Despite this fact, the government has responded to many of his requests. For the reasons stated above,

the government submits that the defendant's discovery request and request for an evidentiary hearing should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER

SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov

**CERTIFICATE OF SERVICE**

On October 15, 2007, I caused the within "Government's Response to Defendant's Motion to Produce Exculpatory Evidence" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Law Offices of Thomas G. Briody
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903

Mr. George J. West
Attorney at Law
One Turks Head Place, Suite 312
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov