IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 07-005S |
| | : | |
| EUDY TEJADA-PICHARDO a/k/a | : | |
| Enoc Soto and RICARDO MEJIA | : | |

GOVERNMENT'S MOTION IN LIMINE

Pursuant to Fed. R. Evid. 402, Fed. R. Evid. 403, Fed. R. Evid. 602, Fed. R. Evid. 611, and Fed. R. Evid. 802, the government moves the Court to preclude examination of all witnesses regarding the District of Massachusetts prosecution against John M. Cicilline and Lisa Torres, or the presentation of any evidence relating to that case.

INTRODUCTION

The defendants seek to introduce evidence that Lisa Torres, who was in daily contact with the female informant (Tr., 12/10/07, p. 48), is under indictment in the District of Massachusetts for conspiracy to obstruct justice and making false statements. To date, the defendants have not stated the relevance of the Cicilline/Torres case to their defense[1];

[1] The defendants have not stated in their briefs or in open court in any of the hearings held over the past three months the relevance of Lisa Torres to their defense; however, at one point, the defendants made an ex parte submission to the Court regarding Lisa Torres. After that submission, the Court indicated that the manner in which the defendants intended to mention Lisa Torres had nothing to do with the pending case in the District of Massachusetts. The Court determined that the defendants could reference Lisa Torres in the limited manner discussed during the ex parte session, but would not be allowed to get into the Cicilline/Torres indictment or the facts of District of

however, on December 10, 2007, the Court outlined three possible theories of admissibility when it set forth parameters for the parties' briefs on this issue. (Tr., 12/10/07, p. 102). Two of the issues raised by the Court concern the impeachment value of the telephonic contact between the female informant and Lisa Torres. The third, and most critical issue raised by the Court, is whether the Cicilline/Torres case pending in the District of Massachusetts has any relevance to this case as a defense. The government will address each issue in turn.

IMPEACHMENT

First, the Court noted that there may be impeachment value to the likely telephonic contact between Lisa Torres and the female informant to the extent the female informant testified that she did not have her personal cellular phone on December 18, 2006. (Tr., 12/10/07, p. 102); see Fed. R. Evid. 608 and 613. However, if the female informant's prior testimony is viewed in its entirety, then the telephone calls have minimal impeachment value. The female informant was asked numerous times in numerous different ways whether she spoke with Lisa Torres on December 18, 2006. She testified repeatedly that she remembers speaking with Lisa Torres in the morning, but does not remember speaking to Lisa Torres on the evening of December 18, 2006. (Tr., 11/19/07,

---

Massachusetts case. Since then the Court has requested additional briefing on the issue.

pp. 13-15, 19, 22, 23, 26-28, 31; Tr., 12/10/07, pp. 12-14, 16-18, 20, 34-36, 38, 39, 48, 64, 65, 73); see also (Testimony of Agent Michael Naylor, Tr., 11/15/07, p. 35). She also testified that she does not remember whether she had her personal cellular phone with her. According to the female informant, she spoke with Lisa Torres "all the time, every day, four, five, six, ten times a day, every day." (Tr., 12/10/07, p. 48). It is not surprising that she does not remember every telephone call from over one year ago or whether she had her personal cellular phone with her. Accordingly, if the female informant testifies at trial as she did at the two previous hearings, then the telephone calls have little, if any, impeachment value.

The Court also raised the issue of whether the female informant's contact with Lisa Torres constitutes proper impeachment to the extent it demonstrates the female informant's willingness to disregard the guidance of Agent Naylor. (Tr., 12/10/07, p. 102). As the Court recognized, Agent Naylor instructed the female informant to keep Lisa Torres separate from her work with DEA, but he did not tell her to cease all contact with Lisa Torres. (Tr., 12/10/07, p. 102); (Tr., 11/15/07, pp. 17, 20-22). Even the female informant's role as a courier of money between Lisa Torres and Leidy Baez[2] was not in violation of

[2] Leidy Baez was a friend and roommate of the female informant.

Agent Naylor's instructions to keep Lisa Torres out of any work the female informant did with DEA. As such, the contact between the female informant and Lisa Torres is an extrinsic act not probative of truthfulness and therefore, not relevant to cross-examination. See Fed. R. Evid. 608(b) (in the discretion of the district court, counsel may inquire on cross-examination into specific instances of conduct for the purpose of attacking a witness' credibility).

RELEVANCE

The final question raised by the Court was the extent to which the defense should be allowed to delve into the details of the Cicilline/Torres case pending in the District of Massachusetts. (Tr., 12/10/07, p. 103). Specifically, the Court asked the parties to address whether the defense should be allowed to "outline" Lisa Torres' character and the allegations against her. Id. The government contends that Lisa Torres has no involvement in this case and that evidence regarding the prosecution pending against her is not relevant to the jury's determination of whether these defendants knowingly and intentionally distributed cocaine.

Federal Rule of Evidence 402 provides that only relevant evidence is admissible at trial. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which "'does not relate to any predicate act or to any specific matter with respect to which the Government has presented any evidence'" may be properly excluded as irrelevant. See United States v. Cianci, 378 F.3d 71, 105-06 (1st Cir. 2004) (refusing to admit hearsay statements of the defendant because the taped statements, while arguably exculpatory, did not "pass muster under Rule 401").

Although they have not specifically articulated their theory of relevance, the defendants appear to be asserting that Lisa Torres would plant drugs or is the kind of person who would plant drugs. (Tr., 11/15/07, p.86). In his argument to the Court, Defendant Tejada's counsel claims to have a recording in which Lisa Torres discusses third-party cooperation and brags, "I do whatever I have to do to help my clients out. If I have to find the stuff and put it someplace, put it into the car, and then call the authorities to let them know where it is and it's on them, meaning the people who get arrested, and it's no big deal because you don't know them." (Tr., 11/15/07, p.86). Counsel goes on to claim that Lisa Torres is "counseling somebody on how to plant evidence or indicating how she's willing to do that in order to assist a client." Id. From this representation of counsel, the defendants extrapolate that because Lisa Torres was in regular contact with the female informant, the allegations

against Lisa Torres are relevant to the defendant's entrapment defense. (Tr., 11/15/07, p.86). Yet, after five days of hearings, the defendants have not demonstrated any connection between the case against Lisa Torres and the case at hand. Furthermore, the facts of this case do not lend themselves to this type of Lisa Torres-defense.

Lisa Torres is indicted in the District of Massachusetts for conspiracy, obstruction of justice, and making false statements. Her indictment stems from allegations that between 2001 and 2004, she, John M. Cicilline, and others illegally cooperated on behalf of two federally indicted defendants represented by John M. Cicilline and Joseph Bevilacqua. According to the indictment, Lisa Torres made false statements to an Assistant U.S. Attorney (AUSA) regarding her relationship with John M. Cicilline's client. Lisa Torres allegedly made these statements so that the AUSA would approve of her cooperating on behalf of Cicilline's client. Lisa Torres allegedly charged Cicilline's client large sums of money for the cooperation she provided on the client's behalf.

In a nutshell, the District of Massachusetts indictment alleges that Lisa Torres corrupted the judicial process by making false statements to a federal prosecutor and selling cooperation; however, the indictment does not charge Lisa Torres with planting drugs. In fact, the indictment does not even allege that the

cooperation to be provided by Lisa Torres was a fabrication or sham. While the defendants may be trying to insinuate that Lisa Torres is indicted for entrapping innocent individuals, that is not a fair reading of the charges against her. Lisa Torres is indicted for corrupting the judicial process by selling cooperation and lying to a federal prosecutor; she is not indicted for engaging in entrapment-like conduct.

Aside from the two years that elapsed between the case against Lisa Torres in the District of Massachusetts and the instant case, the case at hand involves a much different set of facts. The female informant in this case was married to the individual represented by John M. Cicilline. Unlike the Massachusetts case, the female informant's husband, Cicilline's client, went to trial. The female informant was present during that trial where she was observed by Agent Naylor. After her husband was convicted, the female informant decided to cooperate on his behalf. Instead of merely providing information, the female informant actively cooperated in the investigation of the defendants. Defendant Tejada was known to the informant and the initial information provided was corroborated by another independent source. (Tr., 11/15/07, pp. 68-69). The pertinent conversations with the defendants were recorded; the defendants were observed and recorded delivering the cocaine; and, the defendants confessed. Lisa Torres was not present at the scene

of the drug delivery, nor is there any indication that she had any involvement in the case, or even knew of the defendants. In short, Lisa Torres' involvement is non-existent.

The issue of the female informant's contact with Lisa Torres was explored at length during the evidentiary hearings. The female informant testified on two separate occasions that Lisa Torres was not involved in the case. She explained her relationship with Lisa Torres, and her involvement with Lisa Torres during this time period[3]. Her testimony regarding her involvement with Lisa Torres was consistent with what she told the government and it was consistent with the facts of this case. (Tr., 11/15/07, p. 35). There is nothing to suggest that the female informant's testimony regarding her contact with Lisa Torres is false.

At this point, Agent Naylor has testified on four separate occasions; the female informant has testified on two occasions; the male informant has testified on one occasion; Task Force Agent Joseph Colanduano has testified once; and, Detective Andre

[3] In an ex parte submission to the Court, the government provided the Court with the two Federal Bureau of Investigation (FBI) 302s that mention the female informant and her involvement with Lisa Torres. Also, at the request of the defendant, the government submitted the FBI 302 of Eduardo Pimental a/k/a Manuel Paulino to the Court although it bears no connection to the female informant. The Court determined that the 302 reports were not discoverable because they did not relate to the case against Tejada and Mejia.

Perez has testified once. Not a shred of evidence has been developed that would support the theory that Lisa Torres planted drugs in this case.

Even if the Court were to view the evidence in the light most favorable to the defendant, and conclude that Lisa Torres was coaching the female informant through her cooperation, such a conclusion does not support the theory that the drugs were planted. Defendant Tejada was observed putting the suitcase containing two kilograms of cocaine into the male informant's car. Then, Defendant Tejada got into the male informant's car and told him that there were "two" in the suitcase and he could get "two more" tomorrow. These statements were recorded. The defendants were arrested, and both confessed.

Likewise, even if Lisa Torres had been coaching the female informant on how to cooperate, there is no evidence that the defendants were improperly induced into committing the charged offenses. Even if such evidence existed, as noted earlier, Lisa Torres is not indicted for entrapment-like conduct, and there is no allegation in the Massachusetts indictment that she unlawfully induced individuals to deal drugs.

Information regarding the case against Lisa Torres will not assist the jury in determining whether the defendants conspired to and did distribute the cocaine on December 18, 2006.

Accordingly, the details of the Cicilline/Torres case are not relevant.

PREJUDICE

Even if the Court were to determine that consideration of Lisa Torres' character and the details of her Massachusetts case are somehow relevant to the defense, the Court should nonetheless preclude the defendants from jumping into that quagmire because the prejudice that would ensue far outweighs the meager probative value of such evidence. The district court is tasked with balancing the defendant's interests against considerations such as the "integrity of the adversary process," the "danger of unfairly skewing the truth-determining function" and the "efficient administration of justice." United States v. Brown, 500 F.3d 48, 57 (1st Cir. 2007). Although a defendant has a due process right to offer witnesses in his defense, "the mere assertion of that right does not automatically and inevitably ensure the admissibility of the proffered testimony." Id. Likewise, the district court "retains wide latitude" to limit cross-examination of government witnesses on matters that are "cumulative, irrelevant, outside the scope of direct," or outside the witness's "personal knowledge and expertise." United States v. Lewis, 40 F.3d 1325, 1337 (1st Cir. 1994).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury." See Fed. R. Evid. 403. Similarly, cross-examination may be limited to avoid prejudice and confusion of the issues. See Lewis, 40 F.3d at 1337. Considerable deference is given to the district court's determination of what is relevant and whether the probative value is outweighed by unfair effect. See Brown, 500 F.3d at 58.

In Brown, 500 F.3d at 58, the First Circuit affirmed the district court's decision to exclude testimony that the defendant was not present on July 7, the day of the initial tip. The defendant sought to introduce this testimony to impeach the informant's reliability. See id. However, because the defendant was charged with possessing drugs with the intent to distribute on July 29, and the government did not introduce evidence regarding July 7, the district court determined that the "meager" impeachment value of the evidence was substantially outweighed by the likelihood that it would confuse the issues. Id.

In this case, evidence of the case pending against Lisa Torres and John Cicilline in the District of Massachusetts raises a significant risk of confusing the issues. That case is complex, spanning two years, and involving the intricacies of the federal sentencing scheme. The presentation and the explanation of the Cicilline/Torres case would very likely substantially exceed the expected length of the instant case and seriously distract the jury from the issues in the case at hand. Yet,

after investing the time, resources, and effort that would be necessary for consideration of the Cicilline/Torres matter, the Tejada/Mejia jury would be in no better position to determine whether Defendants Tejada and Mejia were entrapped. Because of the complexity of the Cicilline/Torres case, the likely confusion that will result, and the marginal, if any, benefit to the defense in exploring the issue, the Court should exclude evidence of the Cicilline/Torres case from the trials in this case.

HEARSAY

The defendants in this case do not have an effective method of presenting the Cicilline/Torres case within the rules of evidence. The officers that will be testifying were not involved in the investigation of Lisa Torres and John M. Cicilline, nor do they have first-hand knowledge of that case. While certainly the officers and the female informant could testify to the rumors they have heard, such testimony is not admissible. See Fed. R. Evid. 602 and Fed. R. Evid. 802. The witnesses in this case lack personal knowledge of the Cicilline/Torres case and thus, their testimony would constitute hearsay. To the extent the defendants seek to inquire of Agent Naylor his opinion of Lisa Torres' truthfulness, such opinion testimony is allowed under Fed. R. Evid. 608 when used to impeach a witness. However, the same opinion testimony becomes irrelevant hearsay when not used as

impeachment, since Lisa Torres is not a witness in this case and her credibility is not an issue.

CONCLUSION

The Court should exclude evidence of Lisa Torres' character and the case pending against her because such evidence is not relevant to this case. Even if the Court were to find some relevance, the prejudicial impact of an exploration of the Lisa Torres issue substantially outweighs the probative value of the evidence.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATE OF SERVICE

On January 4, 2008, I caused the within "Government's Motion In Limine" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Law Offices of Thomas G. Briody
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903

Mr. George J. West
Attorney at Law
One Turks Head Place, Suite 312
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj