**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**
**Plaintiff**

**vs.** **CR. 2007-005-S-LDA**

**EUDY TEJADA-PICHARDO**
**Aka Enoc Soto and**
**RICARDO MEJIA**

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant Eudy Tejada-Pichardo is scheduled to appear before the court for sentencing on Friday, May 2, 2008. In anticipation of the sentencing hearing, Mr. Tejada submits this brief memorandum and several attachments. The attachments are letters from the defendant's family members, and may assist the court in understanding the background of Mr. Tejada. Based on the reasons set forth in this memorandum, together with the information previously submitted to the court in the Pre-Sentence Report, and for those arguments which may be advanced at the sentencing hearing, Mr. Tejada asks that he be sentenced pursuant to U.S.S.G. 5C1.2 (the "safety valve").

Mr. Tejada has no criminal history points. He did not use violence or credible threats of violence in connection with the offense. He was not an organizer or leader, and the offenses of conviction did not result in death or serious bodily injury to any person. On Monday, May 28, Mr. Tejada met with counsel and provided the government with all the information has in connection with the offense. The defendant submits that he has provided truthful information to the court and to the government.

Mr. Tejada anticipates that the government will raise two primary objections to his eligibility for the safety valve. First, the government is expected to argue that he has not been truthful. It is the court, however, that determines whether a defendant's proffer satisfies the requirements of the safety valve. United States v. Marquez, 280 F.3d 19, 25 (2002). Congress has aimed safety valve leniency at defendants "***who did their best*** to cooperate to the extent of making full disclosure." United States v. Montanez, 82 F.3d 520, 522 (1st Cir. 1996) (emphasis added).

Mr. Tejada has done his best. There is a substantial language and cultural barrier between the defendant and TFA Naylor, the English-speaking police detective who interviewed Mr. Tejada. Several questions had to be repeated during the interview, and Mr. Tejada had difficulty understanding simple requests. For example, when asked "Do you have a girlfriend?" Mr. Tejada answered "No." Upon further questioning, he acknowledged that he had been involved in relationships with two women. The difficulty appears to have arisen from the fact that Mr. Tejada did not consider these women to be his girlfriend.

Mr. Tejada also has great difficulty with dates, particularly regarding the timing of conversations with government informants. But he described the negotiations involved in the offense, as well as a price for the contraband. He also provided the agents with addresses where he lived, and he identified a motel where he spent time with a female subinformant, providing the name of the motel and the exit number off an interstate highway. Agent Naylor may have been frustrated by the interview and the answers he received, but that does not make Mr. Tejada untruthful.

Defendant submits that some of the difficulty associated with this case can be attributed to Mr. Tejada's background. He comes from the Dominican Republic, and while he claims to have received an education, it is difficult to determine how that education would compare to equivalent grades in the United States. What is clear is that Mr. Tejada comes from a hard-working but simple family. This is corroborated by three letters which are attached to this memorandum. The letters come from Mr. Tejada's aunt, his brother and sister. They describe a family life plagued by poverty and health issues. The letters were translated by this court's office of interpreter. The primary interpreter notes that the "translations" do not convey the absence of punctuation or letter structure, as well as misspellings and poor grammar.[1]

In short, the government's anticipated claims that the defendant is not "truthful" are misguided and inaccurate. Mr. Tejada has satisfied his obligations to provide truthful information to the government.

The second reason that the government is likely to object is because a firearm was seized from the car of the female subinformant. Mr. Tejada's codefendant evidently admitted that he possessed the firearm, but allegedly claimed that he received it from Mr. Tejada. Mr. Tejada denies providing anyone with a weapon, or even knowing that a weapon would be brought to the scene of the offense.

On April 28, the government produced a "trace" report from ATF, identifying the purported owner of the firearm, and a store where it was purchased in New Hamshire. A defense investigator has been unable to locate any such person in the state of New Hampshire, nor has he found any gun dealership matching that provided by ATF. In any

---

[1] This information was provided by Ms. Rosado, when she completed the translations in an email to defense counsel. Ms Rosado characterizes the letters as "barely literate," with ideas that lack coherence.

event, the defense is unaware of any other government efforts to determine how the gun came into the possession of Mr. Mejia.

Mr. Tejada's fingerprints have not been found on the firearm. There is no witness—not even the female subinformant—who has produced a statement suggesting that Mr. Tejada was seen holding the firearm or discussing its use with Mr. Mejia. Similarly, there is no evidence suggesting that Mr. Tejada exercised dominion and control over the firearm. Cf. United States v. McLean, 409 F.3d 492 (1st Cir. 2005)(vacating sentences and remanding for safety valve consideration due to lack of evidence of constructive possession of firearm).

The only evidence that the government may rely on is the statement of codefendant Mejia. At best, the statement is self-serving, and aimed at shifting responsibility away from Mejia—as such, it is unreliable. Further, this court is well aware from Mr. Mejia's trial that he challenged the reliability of his custodial statements to TFA Naylor, and presented evidence via an expert witness regarding the difficulties associated with interpreting statements through a "heritage" Spanish-speaking detective. Mr. Mejia's alleged statements do not come close to establishing possession by a preponderance of evidence.

The Pre-Sentence Report Addendum suggests that the use of a firearm was "reasonably foreseeable" and relevant conduct, thereby disqualifying Mr. Tejada from safety valve consideration. No facts are cited in support of this position. The defendant disagrees with the probation officer's assessment.

Mr. Tejada is not an experienced drug trafficker. He came to the United States slightly more than two years before his arrest in this case. By comparison, all other

parties to this case, including the female subinformant, had been in the United States a longer period of time, and appear to have had extensive experience in the narcotics trade. Mr. Tejada engaged in this conduct at the request—if not the insistence of—the female subinformant. His lack of experience substantially undercuts the suggestion that he could have reasonably foreseen the use of a firearm.

For all these reasons, defendant asks this court to determine that he is eligible for sentencing below the mandatory minimum, and to sentence him accordingly.

/s/ Thomas G. Briody

R.I. Bar no. 4427
The Remington Building
91 Friendship Street
Third Floor
Providence, RI 02903
(401) 751-5151
(401) 421-0876 (facsimile)
Tbriodylaw@aol.com

The undersigned certifies that this motion was filed electronically and distributed to all parties via the ECF system on April 30, 2008.

/s/Thomas G. Briody